# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> JAMES GOODMAN JR., et al., <br><br> *Defendants.* | Civil Action No. 3:23-CV-02397 |

## DEFENDANTS SHALOM AUERBACH; NEIL AUERBACH; HUDSON CLEAN ENERGY ENTERPRISES, LLC; JUDITH AUERBACH; AUERBACH CHILDREN'S DYNASTY TRUST; AUERABCH FAMILY DYNASTY TRUST; ALLIANCE TEXAS HOLDINGS, LLC; 18920 NW 11TH, LLC; STEVEN ZAKHARYAYEV; AND EVELINA PINKHASOVA'S MOTION TO DISMISS

JORDAN, LYNCH & CANCIENNE PLLC
Michael Cancienne
State Bar No. 24055256
Joseph W. ("Jeb") Golinkin II
State Bar No. 24087596
Brittainie J. Zinsmeyer
State Bar No. 24115981
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
713.955.4025 (phone)
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com
bzinsmeyer@jlcfirm.com

**ATTORNEYS FOR MOVANTS**

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES .................................................... iii

INTRODUCTION & SUMMARY OF ARGUMENT ............................. 1

BACKGROUND ...................................................................... 4

    A.    The Disputed Transactions ................................................ 4

    B.    The Bankruptcy Proceedings and Related litigation ............... 6

    C.    The Trustee's Claims Against Movants .............................. 7

    D.    FedEx Files Suit ......................................................... 7

APPLICABLE LAW ................................................................. 8

DISCUSSION ........................................................................ 9

    I.    FedEx Does Not Have Article III Standing to Sue Movants ............ 9

    II.    FedEx Has Not Stated Any Claims Against Movants .................... 10

    A.    FedEx has not stated a RICO claim ................................. 11

    B.    The TTLA does not apply ............................................. 16

    C.    FedEx has no conversion claim against the Movants ............... 16

    D.    FedEx does not allege Movants were unjustly enriched, and any recovery under this theory is barred by the economic loss doctrine ...... 18

    E.    FedEx's fraud claim fails because it does not allege Movants made a material misrepresentation. ......................................... 18

    F.    FedEx has not stated a civil conspiracy claim against the Movants because "money laundering" is not a tort. ............................ 19

i

G.  FedEx's claims against Judith and the Auerbach Dynasty Trusts for conversion, unjust enrichment, common law theft, and theft under the TTLA are all time barred ................................................................. 20

H.  FedEx has not stated any claims against the Individual Movants .......... 21

III.  The Court Does Not Have Personal Jurisdiction Over Movants ..................... 22

IV.  GN Is A Necessary Party ........................................................................ 23

CONCLUSION ................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Chowaiki*,
    No. EP-14-CV-451-KC, 2016 WL 8856919, at *14 (W.D. Tex. Mar. 31, 2016) ............. 16

*Arthur W. Tifford, PA v. Tandem Energy Corp.*,
    562 F.3d 699 (5th Cir. 2009) ........................................................................................ 16

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ............................................. 8

*Baker v. Great N. Energy, Inc.*,
    64 F. Supp. 3d 965, 972–73 (N.D. Tex. 2014) .................................................................. 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ............................................. 8

*Benfield v. Magee*,
    945 F.3d 333, 336 (5th Cir. 2019) ................................................................................... 9

*Boroja v. Roux*,
    No. 1-22-CV-01299-RP, 2023 WL 4054689, at *7 ......................................................... 14

*Castleberry v. Banscum*,
    721 S.W.2d 270, 271 (Tex. 1986) ................................................................................... 22

*Electrosource, Inc. v. Horizon Battery Techs., Ltd.*,
    176 F.3d 867, 872 (5th Cir. 1999) ................................................................................... 23

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351, 358, 141 S. Ct. 1017, 1024 (2021) ...................................................... 22, 23

*Guar. Tr. Co. of N.Y. v. York*,
    326 U.S. 99, 111, 65 S. Ct. 1464, 1471 (1945) ............................................................... 20

*Guardino v. Hart*,
    No. 22-20278, 2023 WL 3818378, at *5 (5th Cir. June 5, 2023) ..................................... 13

*Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) ...................................... 20

*In re Burzynski*,
    989 F.2d 733, 741–42 (5th Cir. 1993) ............................................................................. 15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    623 F. Supp. 2d 798, 811 (S.D. Tex. 2009) .................................................................... 20

*In re GNET, Inc.*,
    Case No. 22-31641 (MVL) ......................................................................... 7, 25

*In re Moore*,
    379 B.R. 284, 289 (Bankr. N.D. Tex. 2007) ................................................. 22

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310, 316–17, 66 S. Ct. 154 (1945) .................................................. 23

*Lee v. Anthony Lawrence Collection, LLC*,
    47 F.4th 262, 265 (5th Cir. 2022),
    *cert. denied*, 143 S. Ct. 1054, 215 L. Ed. 2d 279 (2023) .................................... 24

*Nerium SkinCare, Inc. v. Nerium Int'l, LLC*,
    No. 3:16-CV-1217-B, 2018 WL 2323243, at *10 (N.D. Tex. Mar. 26, 2018) .................. 14

*Oblio Telecom, Inc. v. Patel*,
    711 F. Supp. 2d 668, 678 (N.D. Tex. 2008) .......................................... 12, 13, 22

*Rankin Constr. Nat'l Builders, LLC v. Frank H. Reis, Inc.*,
    No. 4:17-CV-530-A, 2018 WL 1305452, at *3 (N.D. Tex. Mar. 12, 2018)..................... 17

*Regions Bank v. Provident Bank, Inc.*,
    345 F.3d 1267, 1277 (11th Cir. 2003).......................................................... 10

*Seidel, as Trustee, v. 18920 NW 11th, LLC, Adv. No. 23-0372-mvl* (Bankr. N.D. Tex.
    Aug. 5, 2023). ...................................................................................... 7

*Seidel, as Trustee, v. Hudson Clean Energy Enterprises, Adv. No. 23-03090* (Bankr. N.D.
    Tex. Nov. 7, 2023)................................................................................. 8

*Shandong Yinguang Chem Indus. Joint Stock Co. v. Potter*,
    607 F. 3d 1029, 1032–33 (5th Cir. 2010)...................................................... 19

*Smith Int'l, Inc. v. Egle Grp., LLC, No CIVA H-04-4151*, 2005 WL 6548659, at *4 (S.D.
    Tex. June 3, 2005).................................................................................. 23

*Sparling v. Doyle*,
    No. EP-12-CV-00323-DCG, 2014 WL 12489990, at *6 (W.D. Tex. Oct. 23, 2014) ....... 22

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425, 441 (5th Cir. 2000)............................................................... 14

*Thabico Co. v. Kiewit Offshore Servs., Ltd.*,
    No. 2:16-CV-427, 2017 WL 175815, at *3 (S.D. Tex. Jan. 17, 2017) ......................... 16

*Toth Enterprises II, P.A. v. Forage,*
     No. 1:23-CV-542-RP, 2023 WL 8723199, at *9 (W.D. Tex. Dec. 18, 2023)................... 21

*United States ex rel. Williams v. Bell Helicopter Textron, Inc.,*
     417 F.3d 450, 453 (5th Cir. 2005) ...................................................................................... 9

*United States v. BCCI Holdings (Luxembourg), S.A.,*
     980 F. Supp. 21, 27 (D.D.C. 1997) .................................................................................. 11

*Verizon Employee Benefits Comm. v. Frawley,* 655 F. Supp. 2d 644, 647 (N.D. Tex. 2008,
     aff'd, 326 F. App'x 858 (5th Cir. 2009) .......................................................................... 21

*W. Power Inc. v TransAmerican Power Prod., Inc.,*
     316 F. Supp. 3d 979, 987 (S.D. Tex. 2018) ..................................................................... 21

*Walk Haydel & Assoc., Inc. v. Coastal Power Prod. Co.,*
     517 F.3d 235, 242 (5th Cir. 2008) .................................................................................... 23

*Walker v. Armco Steel Corp.,*
     446 U.S. 740, 752–53, 100 S. Ct. 1978, 1986 (1980) ..................................................... 20

*Walker v. Beaumont Indep. Sch. Dist.,*
     938 F.3d 724, 738 (5th Cir. 2019) ................................................................................ 12, 13

*Zastrow v. Hous. Auto Imports Greenway Ltd.,*
     789 F.3d 553, 562 (5th Cir. 2015) .................................................................................... 13

*Zucker v. Farish,*
     No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018).................. 15

## Constitutional Provisions & Statutes

18 U.S.C. § 1956 ....................................................................................................................... 16

18 U.S.C. § 1956(a)(1) .............................................................................................................. 16

18 U.S.C. § 1956(a)(3) .............................................................................................................. 16

18 U.S.C. § 1956(c)(7) .............................................................................................................. 16

18 U.S.C. §§ 1962(a) ................................................................................................................. 11

18 U.S.C. § 1965 ....................................................................................................................... 22

Tex. Civ. Prac. & Rem. Code § 16.003(a) ............................................................................... 21

## Rules & Regulations

Fed. R. Civ. P. 12(b)(2) ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(7) ............................................................................................................. 24

Defendants Hudson Clean Energy Enterprises, LLC; Alliance Texas Holdings, LLC; Shalom Auerbach; Neil Z. Auerbach; Judith Auerbach; Auerbach Partners, L.P.; Auerbach Children's Dynasty Trust u/a/d October 9, 2012; Auerbach Family Dynasty Trust u/a/d October 9, 2012 (together, "the Auerbach Defendants"); and 18920 NW 11th, LLC ("18920"); Steven Zakharyayev; and Evelina Pinkhasova (together, "the 18920 Defendants") (the Auerbach Defendants and 18920 Defendants, collectively, the "Movants") file this Motion to Dismiss Plaintiff FedEx Supply Chain Logistics & Electronics, Inc.'s ("FedEx") Second Amended Complaint under Rules 9(b); 12(b)(2); 12(b)(6); and 12(b)(7) of the Federal Rules of Civil Procedure.

## INTRODUCTION & SUMMARY OF ARGUMENT

This case arises out of the collapse of the Plano based telecommunications company Goodman Networks ("GN"). Before its demise, GN was a party to a peculiar contract with FedEx ("the MSA") under which FedEx would "pre-pay" GN for certain services with the caveat that once those services were provided, GN was contractually obligated to return 99.98% of the pre-paid amounts back to FedEx.

Why FedEx was inclined to enter into such a peculiar contract remains unclear but the Bankruptcy Trustee overseeing GN's ongoing bankruptcy proceedings has alleged that the MSA allowed FedEx to buy products through GN to take advantage of GN's minority-owned business status. Whatever the reason, though, FedEx routinely wired millions of dollars to GN before GN had actually purchased products FedEx would later purchase.

Naturally, FedEx's business decision to engage GN in this agreement was not without risks. In late 2021, GN stopped repaying FedEx under the MSA. But FedEx did

not stop wiring GN money. As a result, GN built up a substantial cash position. Rather than use these funds to pay FedEx, GN used the money to, among other things, pay Hudson roughly $17 million to retire more than $31 million of its *secured* debt and to redeem certain stock options owned by 18920 (together, "the Disputed Transactions").

Both FedEx and the Trustee challenge GN's pre-bankruptcy transactions, including the Disputed Transactions. The Trustee is attempting to unwind the Disputed Transactions in two pending lawsuits against Movants. FedEx, however, does not want to share in the proceeds of the Estate with GN's other creditors, so it filed this lawsuit. In it, FedEx attempts to recast its breach of contract claim against GN into a series of common law and statutory fraud claims against 19 Defendants that FedEx alleges "stole" and then "laundered" the $67 million it paid GN under the MSA. Based on this, FedEx's sprawling second amended complaint purports to state claims against the Movants (and others) for (1) violations of Civil RICO; (2) violations of the Texas Theft Liability Act (the "TTLA"); (3) conversion; (4) unjust enrichment; (5) fraud; and (6) civil conspiracy. All these claims are substantively identical—same deals, same transactions, same money—to those pending against Movants in bankruptcy court. But this issue aside, FedEx does not even have Article III standing to sue Movants. And even if it did, it has not stated a single viable claim against Movants.

***Civil RICO***: FedEx alleges Movants violated RICO by participating in the Disputed Transactions, which they claim involved acts of wire fraud and money laundering. But this claim fails for four reasons. First, FedEx has not identified a viable RICO enterprise that had a purpose other than to "steal" and "launder" GN's money. Second, participating in the Disputed Transactions is not a "pattern of racketeering

activity. Third, FedEx's allegations do not satisfy Rule 9 because it does not identify any acts that violate the money laundering or wire fraud statutes or explain who was involved in these acts or when they occurred. And finally, FedEx did not suffer an injury to its business or property because the "stolen" and "laundered" money belonged to GN, not FedEx.

*TTLA*: The Texas Theft liability Act applies to thieves, not alleged "launderers." FedEx's own pleadings prove Movants did not steal *anything* from anyone, and FedEx did not even own the money about which it complains when the Disputed Transactions occurred because it wired GN the money at issue pursuant to a written contract.

*Conversion*: FedEx's conversion claim fails because (1) FedEx did not own, have legal possession of, and was not entitled to possess the contents of GN's bank account; (2) GN authorized the Disputed Transactions; and (3) Movants did not ask Movants to return the supposedly stolen money.

*Unjust Enrichment*: FedEx's unjust enrichment claim fails because FedEx does not allege Movants received a benefit *from FedEx* or made any representations *to FedEx*, and because it is barred by the economic loss doctrine.

*Fraud*: Fraud requires proof of a material representation that was false on which FedEx relied. FedEx does not allege Movants made *any* representations to it *ever*.

*Civil Conspiracy*: To state a claim for civil conspiracy against Movants, FedEx must allege Movants conspired with a third party to commit a tortious act. FedEx exclusively alleges Movants participated in "money laundering," which is *not a tort*.

What is more, the Court should dismiss this case even if it finds that FedEx has stated at least one claim for two other reasons. First, the failure of FedEx's RICO claim

3

deprives this Court of personal jurisdiction over Movants. And even if that were not so, the Court still should dismiss the case because FedEx failed to join a necessary party.

## BACKGROUND

FedEx alleges it contractually retained GN to perform minor technical services on certain telecommunications equipment FedEx regularly purchased and sold.[1] Rather than simply pay GN for the value of those services, FedEx alleges that "FedEx would pre-purchase inventory of mobile device accessories from AT&T or its suppliers" and [GN] would receive the pre-purchased inventory and provide contract labor and logistics services", then "GN would resale the inventory to AT&T or an end-purchaser on behalf of [FedEx]" and "send [FedEx] the original pre-purchase amount less .02% as compensation for the services provided."[2] As a result, FedEx would deliberately send "millions of dollars per month" to a GN bank account with the understanding that GN would return all but 0.02% of those proceeds shortly after receipt.[3]

### A.   The Disputed Transactions.

In late 2021, FedEx alleges GN ran into financial trouble and began routinely breaching the MSA by not returning the prepayments back to FedEx.[4] FedEx does not contend that Movants had anything to do with these breaches of the MSA. Instead, FedEx joined Movants because they were counterparties in two transactions FedEx now claims were designed to "launder" money out of the GN Account.

---

[1] 2d Am. Compl., ECF No. 96, [hereinafter, "SAC"] ¶ 4.

[2] *Id*.

[3] *Id*. ¶ 5.

[4] *See Id*. ¶¶ 308, 319–20.

1.  *The Bond Buyback (Auerbach Defendants).*

FedEx takes issue with the fact that the Auerbach Defendants allegedly profited by purchasing James Goodman's distressed bonds and reselling them to GN.[5] In early 2022, FedEx claims that Shalom Auerbach (through Defendant Alliance Texas Holdings, LLC) purchased $31,746,617 of GN bonds ("the Bonds") from former executive James Goodman for $11,131,953.[6] FedEx alleges Hudson subsequently acquired these bonds from Alliance and sold them to GN for $17,032,060.[7] FedEx argues that this transaction was improper even though it allowed GN to retire secured debt at a nearly $15 million discount.[8]

2.  *The 18920 Stock Redemption (18920 Defendants).*

FedEx also challenges GN's decision to redeem certain shares of its stock from the 18920 Defendants.[9] In early 2022, FedEx alleges 18920 purchased 4,032,918 shares of preferred stock of GN from multiple entities controlled by James Goodman.[10] The next day, FedEx alleges that 18920 demanded that GN redeem these shares.[11] On March 10, 2022, "Frinzi and James Goodman acting on behalf of [GN] 'purchased' the 4,032,918 preferred shares in [GN] in exchange for a $50 million note."[12] Soon after, 18920 agreed

---

[5] *Id.* ¶ 308 (alleging bonds were worth "$32 million"); ¶ 318 (showing GN paid Hudson $ 17,032,060 for the bonds).

[6] *See id.* ¶¶ 319–20 (showing $10,570,912.00 and $561,041.00 being paid); ¶ 626.

[7] *Id.* ¶¶ 669-72.

[8] *Id.* ¶ 308 (alleging bonds were worth "$32 million"); ¶ 318 (showing GN paid Hudson $ 17,032,060 for the bonds).

[9] *Id.* ¶¶ 351-66.

[10] *Id.* ¶ 353.

[11] *Id.* ¶ 362.

[12] *Id.* ¶ 365.

to release GN from its obligations under the Promissory Note in exchange for $14,500,000 and the transfer of certain assets (including certain Trademarks and rights under a licensing agreement with Tiger Athletic Foundation).[13] FedEx alleges GN also agreed to assign half of its interest in a $44 million promissory note with third party AMRR to 18920 and transfer its interest in a $4.5 million promissory note with a different third party to 18920.[14]

**B.    The Bankruptcy Proceedings and Related Litigation.[15]**

On September 6, 2022, various petitioning creditors filed an involuntary petition against GN in the Bankruptcy Court in the Northern District of Texas.[16] The bankruptcy petition began a chapter 7 bankruptcy proceeding and created the Company's chapter 7 estate.[17] The Bankruptcy Court entered an order for relief against the GN on December 12, 2022.[18] The Bankruptcy Court appointed Scott M. Seidel as the Trustee of the Company and the Estate.

On April 7, 2023, FedEx filed an unsecured proof of claim in the Bankruptcy Case ("Proof of Claim").[19] In it, FedEx states that "GN is liable to [FedEx] on claims for breach of contract, breach of implied duty of good faith and fair dealing, negligent misrepresentation, fraudulent inducement, fraudulent nondisclosure, actual fraud,

---

[13] *Id.*

[14] *Id.*

[15] Courts may take judicial notice of matters of public record when deciding a motion to dismiss. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[16] SAC ¶ 430.

[17] *Id.* ¶ 462.

[18] *Id.* ¶ 461.

[19] *See Addendum to Proof of Claim of FedEx*, ECF No. 32-1, *In re GN, Inc.*, Case No. 22-31641 (MVL) (Bankr. N.D. Tex. Apr. 7, 2023).

constructive fraud, theft, conversion, conspiracy, unjust enrichment, and tortious interference with business relations, among other or substantially similar claims."[20] The Proof of Claim also asserts that the GN transferred $76,104,141.98 from that account to itself, its subsidiaries, or to third parties, against most of whom the Trustee has asserted or has threatened claims.[21]

### C.    The Trustee's Claims Against Movants.

The Trustee subsequently filed two lawsuits against Movants based on the Disputed Transactions. In August 2023, the Trustee sued the 18920 Defendants for participating in a fraudulent transfer, civil conspiracy, fraud, and aiding and abetting based on their involvement in the stock redemption demand.[22]

The Trustee also sued Auerbach Defendants, alleging eleven causes of action—including fraudulent transfer, civil conspiracy, unjust enrichment, and partner liability—based on GN' decision to buy its bonds back from the Auerbach Defendants.[23]

### D.    FedEx Files Suit.

On October 27, 2023, FedEx sued the Movants and others.[24] FedEx has since amended its Complaint twice. FedEx's Second Amended Complaint contains 904 paragraphs set across an astonishing 167 pages. In it, FedEx purports to state claims against Movants for violating the RICO Act; violations of the TTLA; conversion; unjust

---

[20] *Id.* ¶2.

[21] *Id.*

[22] *See Seidel, as Trustee, v. 18920 NW 11th, LLC*, Adv. No. 23-0372-mvl (Bankr. N.D. Tex. Aug. 5, 2023).

[23] *See Seidel, as Trustee, v. Hudson Clean Energy Enterprises*, Adv. No. 23-03090 (Bankr. N.D. Tex. Nov. 7, 2023).

[24] Pl.'s Original Compl., ECF No. 1.

enrichment; fraud; and civil conspiracy. All of FedEx's claims against Movants relate to their alleged involvement in or receipt of benefits from the Disputed Transactions.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). In deciding a Rule 12(b)(6) motion, the Court should "accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). The Court "do[es] not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* at 336–37 (cleaned up).

Additionally, when a plaintiff's claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b). Rule 9(b)'s particularity requirement generally demands the complaint identify the "who, what, when, where, and how" of the allegedly fraudulent content. *See United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).

Finally, the plaintiff, as the party invoking the court's jurisdiction, bears the burden of establishing that personal jurisdiction is proper. *Monkton Ins. Servs., Ltd. v.*

*Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). When the defendant challenges personal jurisdiction pursuant to a Rule 12(b)(2) motion, the matter may be determined without an evidentiary hearing. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 & n.4 (5th Cir. 1993). In that event, the plaintiff must make a prima facie case. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).

## DISCUSSION

The Court should dismiss Plaintiff's claims against Movants because (1) FedEx does not have Article III standing to sue Movants; (2) FedEx has not stated any viable claims against Movants; (3) the Court does not have personal jurisdiction over Movants; and (4) FedEx failed to name a necessary party.

## I.    FedEx Does Not Have Article III Standing To Sue Movants.

To meet the standing requirements of Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. . . . [The Court] ha[s] consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is *particularized as to him*." *Raines v. Byrd*, 521 U.S. 811, 818–19, 117 S. Ct. 2312, 138 L.Ed.2d 849 (1997) (emphasis added).

FedEx admits it wired "millions of dollars per month"[25]—including all of the funds at issue[26]—to "a GN bank account at Prosperity Bank"[27] under a valid, written contract.[28] As a result, the supposedly "stolen" funds on which FedEx bases its claims did not belong

---

[25] SAC ¶ 5.

[26] SAC ¶ 25.

[27] SAC ¶ 6.

[28] SAC ¶¶ 3-4.

to FedEx when this money was supposedly laundered by Movants. *See, e.g., Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1277 (11th Cir. 2003) ("Title to funds in a wire transfer passes to the beneficiary bank upon acceptance of a payment order."); *Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, No. CV 5:22-286-DCR, 2023 WL 6205413, at *2 (E.D. Ky. Sept. 22, 2023) ("Once PNC accepted the transfer and credited the beneficiary's account, [the transferor's] ownership interest in the transferred funds was extinguished."); *Zeal Glob. Servs. Priv. Ltd. v. SunTrust Bank*, 508 F. Supp. 3d 1303, 1317 (N.D. Ga. 2020) ("[A]s a matter of law, title to the wired funds passed to the beneficiary when the funds transfer was completed.").; *First Place Bank v. Olympia Logistics & Servs.., Inc.*, No. 11-13542, 2013 WL 1122559, at *6 (E.D. Mich. Mar. 18, 2013) ("[A]n accepted transfer cannot be revoked without the consent of the beneficiary . . . [t]hus the ownership interest in those funds must pass from the originator after the funds transfer is completed.") (internal citations and quotations omitted); *United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 21, 27 (D.D.C. 1997) (same);

FedEx does not and cannot show how Movants' alleged laundering of *GN's money* "affected [FedEx] in a personal and individual way" that is different to any injury such conduct would have caused to GN or its other creditors. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n. 1, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). As a result, FedEx does not have Article III standing to move forward with its claims against Movants.

## II.    FedEx Has Not Stated Any Claims Against Movants.

In the bankruptcy proceedings, FedEx claims GN owes it more than $67 million in damages based on its breaches of the MSA. FedEx now attempts to recover that same money from 19 defendants, including Movants, based on a wild array of extra-contractual

10

claims. For reasons set out below, the Court should dismiss all of FedEx's claims *with prejudice*.

### A.   FedEx has not stated a RICO claim against Movants.

FedEx claims the Movants violated 18 U.S.C. §§ 1962(a)–(d) of the RICO Act by participating in an "enterprise" to "launder . . . funds out of [Goodman's] Account through [ ] various commercial transactions."[29] "Though the subsections are distinct, each shares three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *D&T Partners, LLC v. Baymark Partners Mgmt., LLC*, 98 F.4th 198, 204–05 (5th Cir. 2024). FedEx has not adequately alleged any of these elements.

### 1.  *FedEx does not identify a RICO enterprise.*

A "RICO enterprise is an element required for *any RICO claim*[.]" *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 678 (N.D. Tex. 2008) (emphasis added). According to FedEx, "[t]he Enterprise in this case consists of each of the Defendants."[30] FedEx further alleges that the purpose of the Enterprise was to "steal the funds from [FedEx], deposit them into a bank account located in this district and then to launder the stolen funds from that account through a series of fraudulent transactions and shell companies benefiting the Defendants."[31]

FedEx's allegations cannot sustain its RICO claim. Under RICO, the alleged enterprise "does not have to be a formal or legal entity, but it must have *some sort of*

---

[29] SAC ¶ 482.

[30] *Id.* ¶ 481.

[31] *Id.* ¶ 59.

*hierarchical or consensual decision-making structure,* and it *must exist for purposes other than just to commit predicate acts.*" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 738 (5th Cir. 2019) (emphasis added). FedEx's SAC establishes that certain Movants were *counterparties* to the transactions that supposedly were undertaken in support of the enterprise's "scheme" to launder money out of the GN MSA Account.[32] For example, FedEx observes that James Goodman "asked" Auerbach to buy his bonds "at .24 cents"[33] and states that this merely spurred "negotiations and discussions via email, text, and telephone" between Auerbach and Frinzi/Goodman.[34] These communications—which FedEx quotes in its Complaint—establish that there was no *structure* or *hierarchy* among "all Defendants." This alone defeats FedEx's RICO claim Against Movants.

But that's merely the tip of the iceberg. "While the RICO statute defines 'enterprise' broadly to include a 'group of individuals associated in fact although not a legal entity, . . . an association-in-fact enterprise must have an existence that can be defined apart from the commission of the predicate acts.*" *Guardino v. Hart*, No. 22-20278, 2023 WL 3818378, at *5 (5th Cir. June 5, 2023). FedEx freely admits that the purpose of the "enterprise" was to commit the very acts—"money laundering"—FedEx points to as evidence that Movants engaged in a "pattern of racketeering activity."[35] This overlap is fatal to FedEx's RICO claim. *See, e.g., Zastrow v. Hous. Auto Imports Greenway Ltd.*, 789 F.3d 553, 562 (5th Cir. 2015) (dismissing RICO claim because "Zastrow's complaint alleges an enterprise created by the alleged racketeering activity itself."); *Guardino*, 2023 WL

---

[32] *Id.* ¶¶ 304; 353-55;

[33] *Id.* ¶ 34.

[34] *Id.* ¶ 307.

[35] *Id.* ¶¶ 495-699.

3818378, at *5 (affirming dismissal of RICO claim because plaintiff failed to allege "existence of an enterprise that is an entity separate and apart from" its alleged pattern of racketeering activity); *Walker*, 938 F.3d at 738–39 (same); *Oblio Telecom*, 711 F. Supp. at 678 (same).

2. *FedEx has not identified a pattern of racketeering activity.*

FedEx's RICO claim also fails because it has not sufficiently plead that the Movants engaged in a "pattern of racketeering activity." "[A]ny civil RICO claim must properly plead (1) a pattern (2) of racketeering activity." *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018). To make that showing, FedEx must allege Movants committed two or more predicate acts, and that those acts "are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

FedEx tries to make this showing by alleging that the Movants participated in the scheme to defraud FedEx by engaging in the Disputed Transactions between December 9, 2021 and February 4, 2022.[36] But this is simply not enough because "[c]ourts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of closed or open pattern continuity."[37] *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2018 WL 2323243, at *10 (N.D. Tex. Mar. 26, 2018); *see also Murphy v. Grisaffi¸ No. CIV.A. 304CV0134B,* 2005 WL 598015, at *6 (N.D. Tex. Mar. 14, 2005)

---

[36] *See* SAC ¶¶ 258, 300-336.

[37] FedEx seems to know this will not do, so it also vaguely alleges that "efforts to launder the stolen/defrauded [FedEx] funds continue." These vague allegations do not come close to satisfying Rule 9.

13

(granting a motion to dismiss where plaintiff's allegations did not establish the continuity element of a RICO violation); *Boroja v. Roux*, No. 1-22-CV-01299-RP, 2023 WL 4054689, at *7–8 (W.D. Tex. June 15, 2023) (finding allegations of transfer of assets over a seven-month period with no future criminal conduct to be insufficient to plead the continuity requirement).

      3.  *FedEx's RICO allegations do not satisfy Rule 9.*

Finally, FedEx conspicuously fails to comply with Rule 9(b), which applies "[w]hen an plaintiff asserts a civil RICO claim that rests upon the predicate acts of wire fraud[.]" *Zucker v. Farish*, No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018). The Fifth Circuit has made clear that "[p]laintiffs must plead specific facts, not mere conclusory allegations which establish" a RICO claim. *Walker*, 938 F.3d at 738. Further, "a RICO plaintiff must plead the specified facts *as to each defendant*. It cannot . . . lump[ ] together the defendants." *Id.* (alterations in original) (internal quotation marks omitted).

FedEx completely ignores the Fifth Circuit's prohibition on "lumping" and describes the predicate acts committed by "Shalom Auerbach; Neil Auerbach; Auerbach Partners; Alliance; Hudson; Auerbach Family Trust; and the Auerbach Children's Trust" collectively, as opposed to individually.[38] The same problem plagues FedEx's claims against the 18920 Defendants. As above, FedEx lumps "18920 NW, Steven Zakharyayev, and Evelina Pinkhasova." [39] As a result, it is impossible to tell who did what, when, or to whom. FedEx's allegations also do not allow the Court (or anyone else) to evaluate

---

[38] *Id.* ¶ 555-59.

[39] *Id.* ¶¶ 562-65.

whether FedEx's allegations against each Movant set forth the required elements of the alleged predicate acts. This deficiency is fatal to FedEx's RICO claims.

FedEx's claims suffer from other problems, too. For example, to plead a RICO claim based on wire fraud, a plaintiff must allege, among other things, "a scheme to defraud *by means of false or fraudulent representation*." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (emphasis added). FedEx does not allege that any Movant made a single representation, false or otherwise, to FedEx.[40] In fact, FedEx never alleges that any of the Movants *ever* contacted or communicated with FedEx about *any* subject.

FedEx's money laundering allegations are even more flawed. To establish money laundering under 18 U.S.C. § 1956, a plaintiff must plead a defendant's knowledge or belief that the money involved was the proceeds of a "specified unlawful activity." *Armendariz v. Chowaiki*, No. EP-14-CV-451-KC, 2016 WL 8856919, at *14 (W.D. Tex. Mar. 31, 2016); 18 U.S.C. §§ 1956(a)(1), (a)(3). "Specified unlawful activity" is defined by 18 U.S.C. § 1956(c)(7). FedEx does not allege which specified unlawful activity under the statute that the Movants knew or believed that money they were receiving or transferring derived from. Rather, FedEx makes conclusory allegations that the Movants knew or should have known that the funds were "stolen."[41] These conclusory allegations are insufficient to establish money laundering as a predicate act. *See Armendariz*, 2016 WL 8856919, at *14.

---

[40] *See, e.g.,* SAC ¶ 652.

[41] *See, e.g.,* SAC ¶¶ 653, 656, 664, 667, 671.

    *4.  FedEx does not allege Movants proximately caused an injury to its "business or property."*

To have standing to bring a RICO claim against Movants, FedEx must allege that each individual Movant's commission of a predicate acts caused some injury to FedEx's business or property. 18 U.S.C. § 1964(c). As discussed above, FedEx does not and cannot make this showing because the supposedly laundered money did not belong to FedEx. *Regions Bank*, 345 F.3d at 1277; *BCCI Holdings*, 980 F. Supp. 21 at 27.

**B.   The TTLA does not apply.**

FedEx purports to state a claim against the Movants "pursuant to" Sections 134.003-005 of the TTLA because they "received the stolen funds . . . knowing that the funds were the product of the original theft."[42] FedEx's own pleadings demonstrate that Movants *did not receive stolen funds* because FedEx did not own the money that was transferred at the time of the Disputed Transactions.

**C.   FedEx has no conversion claim against the Movants.**

Along the same lines, FedEx has not stated a viable conversion claim against the Movants. As above, FedEx seeks to hold the Movants liable for "conversion" and "theft" because they "knew that the source of the funds paying them came from stolen FedEx funds originally held in the 4352 Account."[43]

There are four obvious problems with this claim. First, to establish a claim for conversion, FedEx must allege that it owned the money in the 4352 Account. *Rankin Constr. Nat'l Builders, LLC v. Frank H. Reis, Inc.*, No. 4:17-CV-530-A, 2018 WL 1305452, at

---

[43] *Id.* at ¶ 733.

*3 (N.D. Tex. Mar. 12, 2018). But FedEx admits the money in the GN MSA Account *belonged to GN*.[44]

Second, FedEx does not allege the Movants" wrongfully exercised dominion and control over the property[.]" *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). FedEx cannot make this showing because its own pleading establishes that the transfers to the Movants from GN were subject to negotiated contracts approved by the legal owner of the funds at issue, GN. *Id*. FedEx only alleges Movants were involved in "laundering" the proceeds through the Disputed Transactions.[45] These allegations are insufficient. *See Thabico Co. v. Kiewit Offshore Servs., Ltd.*, 2:16-CV-427, 2017 WL 175815, at *3 (S.D. Tex. Jan. 17, 2017) (property received pursuant to a contract is not subject to conversion claim)).

Third, to state a claim for conversion, FedEx must demonstrate that the Movants "had no lawful claim to the property." *Thabico Co. v. Kiewit Offshore Servs., Ltd.*, No. 2:16-CV-427, 2017 WL 175815, at *3 (S.D. Tex. Jan. 17, 2017). FedEx cannot make that showing because its own pleading establishes that the transfers to the Movants from GN were subject to negotiated contracts approved by the legal owner of the funds at issue, GN. *Id*.

Finally, FedEx also has not alleged that it asked Movants to return its property or that Movants refused. *See Arthur W. Tifford, PA*, 562 F.3d at 705 (listing request for return and refusal as elements for conversion). All these facts are fatal to FedEx's conversion claim.

---

[44] *Id.* at ¶¶ 6-7.

[45] *Id.*

**D.   FedEx does not allege Movants were unjustly enriched, and any recovery under this theory is barred by the economic loss doctrine.**

FedEx purports to state a claim against the Movants for unjust enrichment based on their receipt of supposedly stolen funds.[46] But FedEx's allegations against the Movants cannot support an unjust enrichment claim for two reasons.

First, "[a] plaintiff may recover for unjust enrichment if the defendant has obtained a benefit *from him* by fraud, duress, or the taking of an undue advantage." *Scott v. Wollney*, No. 3:20-CV-2825-M-BH, 2021 WL 4851852, at *4 (N.D. Tex. Sept. 10, 2021). FedEx does not allege that the Movants received any benefit *from FedEx*, nor does it allege that any Movant *ever* interacted with or made and representations to FedEx.

FedEx's claim also fails because it is barred by the economic loss doctrine. That rule provides that a party cannot recover for unjust enrichment "when a valid, express contract covers the subject matter of the parties' dispute." *Id.* (citation omitted). "This rule is applicable not only when the plaintiff is seeking to recover in equity from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who is alleged to have benefited from its performance." *Id.* FedEx admits that the money it seeks to recover was subject to a valid contract—that MSA—so its unjust enrichment must fail.

**E.   FedEx's fraud claim fails because it does not allege Movants made a material misrepresentation.**

Under Texas law, fraud claims require a complainant to plead facts establishing, among other things, a material representation by the defendant made to the plaintiff.

---

[46] *Id.* at ¶¶ 742-55.

*Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972–73 (N.D. Tex. 2014) (citing *Shandong Yinguang Chem Indus. Joint Stock Co. v. Potter*, 607 F. 3d 1029, 1032–33 (5th Cir. 2010)). As discussed above, FedEx has not alleged that any of the Movants made *any representations* to FedEx, much less any representations that were material or false. As a result, the Court should dismiss FedEx's common law fraud claims against the Movants.

### F.   FedEx has not stated a civil conspiracy claim against the Movants because "money laundering" is not a tort.

Finally, FedEx seeks to hold the all the Movants liable for "civil conspiracy"[47] which FedEx describes as "one to steal funds from [FedEx] and launder them."[48] FedEx expressly acknowledges that the Movants did not participate in the "theft," which means any liability for civil conspiracy must derive from some "conspiracy" to "launder."[49] But this allegation cannot support a "civil conspiracy" claim against the Movants because "liability for a civil conspiracy depends on *participation in an underlying tort.*" *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) (emphasis added). Therefore, to adequately plead a claim for civil conspiracy, a plaintiff must allege both a claim for conspiracy and a claim for an underlying tort. *Id.* Money laundering may be a crime, but no court in Texas has ever found that it is a tort. Accordingly, FedEx's civil conspiracy claim against the Movants fails.

And even if that were not so, the Court would still need to dismiss this claim because FedEx has not alleged and cannot show how it was damaged by the "money laundering." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 811 (S.D.

---

[47] SAC at p. 154.

[48] *Id.* ¶ 822.

[49] *Id.* ¶ 482.

19

Tex. 2009) ("A key distinction between criminal and civil conspiracy is that unlike for a criminal conspiracy, for civil conspiracy the mere existence of a conspiracy is insufficient to constitute a claim; there must also be damages resulting from the commission of a wrong which injures another.").

### G. FedEx's claims against Judith and the Auerbach Dynasty Trusts for conversion, unjust enrichment, common law theft, and theft under the TTLA are time-barred.

 Federal courts addressing state-law claims must apply the state statute of limitations. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 111, 65 S. Ct. 1464, 1471 (1945); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–53, 100 S. Ct. 1978, 1986 (1980). Claims for conversion, unjust enrichment, and TTLA claims are subject to a two-year statute of limitations under Texas law. TEX. CIV. PRAC. & REM. CODE § 16.003(A); *W. Power Inc. v TransAmerican Power Prod., Inc.*, 316 F. Supp. 3d 979, 987 (S.D. Tex. 2018) (TTLA); *Toth Enterprises II, P.A. v. Forage*, No. 1:23-CV-542-RP, 2023 WL 8723199, at *9 (W.D. Tex. Dec. 18, 2023) (conversion); *Verizon Employee Benefits Comm. v.* Frawley, 655 F. Supp. 2d 644, 647 (N.D. Tex. 2008), *aff'd*, 326 F. App'x 858 (5th Cir. 2009) (unjust enrichment).

The last date for any alleged misconduct by Judith or either of the Auerbach Dynasty Trusts is on February 4, 2022.[50] FedEx did not join Judith and the Auerbach Dynasty Trusts until filing its First Amended Complaint on February 14, 2024.[51] Thus, FedEx's claims for conversion, unjust enrichment, and violations of the TTLA against Judith and the Auerbach Dynasty Trusts were brought more than two years past the

---

[50] *Id.* ¶ 324.

[51] *See* 1st Am. Compl., ECF 70.

alleged misconduct and therefore would be barred by statute of limitations. As such, those claims should be dismissed.

**H.  FedEx's has not stated any claims against the Individual Movants.**

FedEx purports to bring claims against Shalom Auerbach; Neil Auerbach; Judith Auerbach; Steven Zakharyayev; and Evelina Pinkhasova (together, "Individual Movants") based on their involvement in the Disputed Transactions. None of these claims are viable.

First, FedEx does not even allege Judith Auerbach was involved in the Disputed Transactions *at all*. Indeed, Judith Auerbach's name does not appear a single time in the "Background and Facts" or "Causes of Action" sections of the SAC.

Along the same lines, FedEx does not allege that any of the remaining Movants ever negotiated or executed any contract in their individual capacity or that any funds were ever wired to their personal bank accounts. Indeed, "[i]t is a basic proposition that the corporate veils exist for a reason—to separate and isolate—and should only be pierced reluctantly." *In re Moore*, 379 B.R. 284, 289 (Bankr. N.D. Tex. 2007); *see Castleberry v. Banscum*, 721 S.W.2d 270, 271 (Tex. 1986). While exceptions like the alter ego doctrine exist, the exceptions must be plead to be considered. *See, e.g., Sparling v. Doyle*, No. EP-12-CV-00323-DCG, 2014 WL 12489990, at *6 (W.D. Tex. Oct. 23, 2014).

FedEx has not plead that the Individual Movants were alter egos of any of the corporate-based Defendants, nor has it identified any instance in which any of the

21

Individual Movants acted in their individual capacity rather than on behalf of a corporate entity or partnership. Accordingly, it has no claim against the Individual Movants.

## III.   The Court Does Not Have Personal Jurisdiction Over Movants.

The failure of FedEx's RICO claim against the Movants also deprives this Court of personal jurisdiction over Movants. The sole basis for personal jurisdiction that FedEx relies on is nationwide service of process under the RICO statute, 18 U.S.C. § 1965. But FedEx has failed to plead viable RICO claims against the Movants, and this Court does not have personal jurisdiction under that statute. *See Oblio Telecom*, 711 F. Supp. 2d at 676. Rather, the appropriate test would be to determine whether jurisdiction over the Movants comports with due process. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358, 141 S. Ct. 1017, 1024 (2021).

Whether jurisdiction comports with due process depends on the nature of a party's contacts with the forum at issue. Generally, there are two kinds of contacts that can give rise to personal jurisdiction. *Id.* General jurisdiction applies when a party's contacts with a forum are so substantial as to render the party "essentially at home." *Id.* Individuals are typically considered "at home" where they reside, while companies are "at home" in the state of incorporation and in their principal place of business. *Id.* at 358–59, 141 S. Ct. at 1024. This Court does not have general jurisdiction over any Movant because no Movant resides in/is incorporated in/or has a principal place of business located in Texas.[52]

The absence of general jurisdiction means FedEx must make a *prima facie* showing of specific personal jurisdiction in this forum. *See Walk Haydel & Assoc., Inc.*, 517 F.3d at

---

[52] *See* SAC ¶¶ 36–38, 49–50, 54, 55, 56.

242. To make this showing, FedEx must allege that Movants have contacts that demonstrate they purposefully availed themselves of the privilege of conducting activities within the forum and that FedEx's claims arise out of or relate to those contacts. *Ford Motor*, 592 U.S. at 360, 141 S. Ct. at 1025. FedEx has not done that.[53] Indeed, the only contact with Texas that FedEx alleges are isolated to conversations about GNET. But merely contracting with a Texas resident is insufficient to establish minimum contacts. *Smith Int'l, Inc. v. Egle Grp., LLC*, No CIVA H-04-4151, 2005 WL 6548659, at *4 (S.D. Tex. June 3, 2005) (citing *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999)). Without other allegations that the Movants purposefully availed themselves of the forum, this Court lacks personal jurisdiction over any of the remaining claims once RICO is dismissed.

## IV.   GN Is A Necessary Party.

Finally, the Court should dismiss FedEx's claims against Movants even if it concludes FedEx has stated a claim against them. "Rule 12(b)(7) allows for dismissal of a suit when the plaintiff fails to join a required party under Rule 19." *Lee v. Anthony Lawrence Collection, LLC*, 47 F.4th 262, 265 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1054, 215 L. Ed. 2d 279 (2023) (citing FED. R. CIV. P. 12(b)(7)). "Required" parties include: "(1) parties needed to give complete relief to the existing parties" or (2) a party who claims an interest in the subject matter of the action and is so situated in a manner in which their absence could lead to *"existing parties [being] exposed to multiple or inconsistent obligations." Id.* *(*citing FED. R. CIV. P. 12(a)(1)(A), (a)(1)(B)(ii)) (emphasis added). While the moving party

---

[53] *See, e.g.*, SAC ¶¶ 318, 323 (noting that payment for, and approval of, the transaction with Hudson occurred outside of Texas).

bears the initial burden to show a possibly necessary party is absent, once met, the burden shifts to the nonmovant to dispute the necessity shown. *Id.*

FedEx has failed to join GN.[54] First, the Court cannot give complete relief without first determining whether the contract between FedEx and GN was breached or that the funds kept by GN in fact were the product of theft. The subject of that breach is already included in the Proof of Claim against Goodman Networks, filed in the Bankruptcy Court.[55] Absent that underlying determination, full relief cannot be determined here.

Second, moving forward without joining GN, who FedEx alleges was at the heart of the alleged "theft,"[56] as a party creates an unnecessary and inappropriate risk of double recovery, as well as potential inconsistency across courts. As the Proof of Claim explicitly acknowledges, FedEx is seeking to recover the same "stolen money" in the bankruptcy proceedings that it is hoping to recover in this case.[57] And the Trustee is explicitly seeking to recover *the same money* from *the same Defendants* based on *the same transactions* that FedEx seeks to recover in this case. This reality is further underscored by the fact that FedEx has agreed to share 10% of any recovery FedEx obtains here with the Estate.[58] Allowing FedEx to move forward without GN, despite its alleged critical role in these "schemes," forces Movants to defend the same claims in two forums: the Bankruptcy Court and this Court. This is not appropriate or efficient, nor is it fair.

---

[54] *Id.* ¶ 434.

[55] *See Addendum to Proof of Claim of FedEx*, ECF No. 32-1, *In re Goodman Networks, Inc.*, Case No. 22-31641 (MVL) (Bankr. N.D. Tex. Apr. 7, 2023).

[56] *See, e.g.*, SAC ¶¶ 214–21, 249–50, 481, 710.

[57] *Compare generally* SAC *with Addendum to Proof of Claim of FedEx*, ECF No. 32-1, *In re GN, Inc.*, Case No. 22-31641 (MVL) (Bankr. N.D. Tex. Apr. 7, 2023).

[58] SAC at Ex. 1 (showing that "ten percent (10%) [of any net proceeds] shall be paid by FedEx to the Trustee [and] shall constitute free and clear property of the Estate . . . .").

## CONCLUSION

Choices have consequences. FedEx *chose* to enter into the MSA with GN and *chose* to wire millions of dollars to the GN MSA Account. FedEx's frustration with its status as a mere unsecured creditor in GN's bankruptcy is understandable, but it was also an entirely foreseeable consequence of its decision to willingly agree to overpay GN by 99.8% instead of simply paying GN for the actual value of its services. Accordingly, FedEx cannot recover the damages it sustained as a result of GN's breaches of the MSA from the persons and companies with which GN did business *after it surrendered title to the money at issue*. The Court should therefore dismiss all of FedEx's claims against Movants *with prejudice* because allowing FedEx to amend would be futile.

Respectfully submitted,

JORDAN, LYNCH & CANCIENNE PLLC

*/s/ Joseph W. Golinkin II*
Michael Cancienne
Texas Bar No. 24055256
Joseph ("Jeb") W. Golinkin II
Texas Bar No. 24087596
Brittainie J. Zinsmeyer
State Bar No. 24115981
1980 Post Oak Blvd., Suite 2300
Houston, Texas 77056
Telephone: 713.955.4025
Facsimile: 713.955.9644
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com
bzinsmeyer@jlcfirm.com

COUNSEL FOR DEFENDANTS
SHALOM AUERBACH, NEIL AUERBACH,
HUDSON CLEAN ENERGY ENTERPRISES,
LLC, JUDITH AUERBACH, AUERBACH
PARTNERS, LP, AUERBACH CHILDREN'S
DYNNASTY TRUST, AUERBACH FAMILY
DYNASTY TRUST, and ALLIANCE TEXAS
HOLDINGS LLC; 18920 NW 11th, LLC;
STEVEN ZAKHARYAYEV; AND EVELINA
PINKHASOVA

## CERTIFICATE OF SERVICE

This certifies that a copy of the above and foregoing was sent to the following counsel of record by CM/ECF on June 3, 2024:

*/s/ Joseph W. Golinkin II*
Joseph W. Golinkin II