# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 3:23-cv-02397 ) ) |
| JAMES E. GOODMAN, JR., *et al.*, | ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JODY GOODMAN'S, JONATHAN GOODMAN'S AND JOHN GOODMAN'S MOTION TO DISMISS [DKT. NO. 120] AND INCORPORATED MEMORANDUM OF LAW

**BUTLER SNOW LLP**

By: /s/ *Daniel W. Van Horn*
DANIEL W. VAN HORN  (Pro Hac Admitted)
S. KEENAN CARTER (TX Bar No. 24006966)
R. CAMPBELL HILLYER (Pro Hac Admitted)
ADAM M. LANGLEY (Pro Hac Admitted)
KATHERINE KUCHENBECKER (Pro Hac Admitted)
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 (fax)
Danny.VanHorn@butlersnow.com
Keenan.Carter@ButlerSnow.com
Cam.Hillyer@butlersnow.com
Adam.Langley@butlersnow.com
Katherine.Kuchenbecker@butlersnow.com

**SAYLES LAW FIRM**
RICHARD A. SAYLES
Texas Bar No. 17697500
dsayles@sayleslawfirm.com

        5600 W. Lovers Lane, Suite 116-363
        Dallas, Texas 75209
        (214) 643-8030 (Telephone)

        **FEDERAL EXPRESS CORPORATION**
        JASON R. BERNHARDT
        Texas Bar No. 24045488
        jasonbernhardt@fedex.com
        3620 Hacks Cross Road, Building B
        Memphis, Tennessee 38125
        (901) 434-3213 (Telephone)
        (901) 434-9279 (Fax)

        **COUNSEL FOR PLAINTIFF FEDEX SUPPLY**
        **CHAIN LOGISTICS & ELECTRONICS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

    I certify that a true and correct copy of the foregoing motion has been served on all counsel of record via the Court's CM/ECF system this the 31st day of July 2024.

        By: */s/ Daniel W. Van Horn*

Plaintiff FedEx Supply Chain Logistics & Electronics, Inc. ("Plaintiff" or "FSCLE") for its Response in Opposition to Motion to Dismiss [Dkt. # 120] filed by Jody Goodman, Jonathan Goodman, and John Goodman states as follows:[1]

### INTRODUCTION & SUMMARY OF ARGUMENT

Defendants' Motion to Dismiss largely restates the arguments raised by the other Defendants and should be denied for the same reasons as set forth in FSCLE's Omnibus Response [Dkt. # 129]. For the sake of judicial efficiency, FSCLE does not restate its Omnibus arguments but incorporates them as if fully set forth herein. In addition, FSCLE's files this response to address the unique arguments raised by these Defendants and their roles in the schemes set forth in the Second Amended Complaint ("SAC").

As a starting point, it should be noted that this case is merely at the pleading stage. FSCLE expects its pleadings will change over time as discovery reveals additional facts that are currently unknown. But there cannot be a serious or legitimate argument that FSCLE's 185-page SAC fails to state the minimum necessary in order for FSCLE to proceed to discovery regarding each of its claims. Like the other Motions to Dismiss, this Motion to Dismiss is just a thinly veiled attempt to argue the merits of this dispute and fails because it ignores the actual (and very) detailed facts pled in the SAC. Defendants' motion is thus procedurally improper at this stage of the case as the Court

---

[1] To clarify, this Response to the Motion to Dismiss [Dkt. # 120], at this time, should only be considered as to Jody and Jonathan Goodman and not as to John Goodman. This is because of the bankruptcy automatic stay that went into effect after the Motion to Dismiss was filed, when John Goodman filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court"). Specifically, John Goodman commenced bankruptcy case no. 24-10806 before the Hon. Shad Robinson and that gave rise to the automatic stay under 11 U.S.C. § 362(a) *after* he filed this motion. On July 29, 2024, FSCLE filed a motion for relief from stay in the Bankruptcy Court seeking to modify the automatic stay to allow FSCLE to liquidate its claims against John Goodman in this case alongside the other named defendants. A hearing is set on that motion in the Bankruptcy Court for August 20, 2024. FSCLE respectfully requests that this Court presently accept this Response as to Jody and Jonathan Goodman, who are non-debtors, and later deem it a response as to John Goodman if the automatic stay is determined inapplicable to FSCLE's obligation to respond to the Motion to Dismiss or upon the Bankruptcy Court granting relief from the automatic stay to allow FSCLE to prosecute its claims against John Goodman in this case.

must accept the facts as pled by FSCLE. *Sonnier v. State Farm Mut. Auto Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007); *E. Poultry Distribs., Inc. v. Puez,* No. 3:00-CV-1578-M, 2001 U.S. Dist. LEXIS 27007, at *3-4 (N.D. Tex. Dec. 3, 2001) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The actual facts pled show that Defendants John Goodman, Jody Goodman and Jonathan Goodman played a significant role in schemes set forth in the SAC. John Goodman owned and controlled Goodman Networks until 2021 when he sold it to James Goodman. SAC at ¶ 19-20. During that time, he started the effort to strip assets out of Goodman Networks. *Id*. He was a beneficiary of the fraudulent stock sale using stolen FSCLE funds to purchase his worthless stock. SAC at ¶¶ 26, 374 and 379. He was part of the effort to help Jim Frinzi obtain control over the 4352 account at Prosperity Bank even though there was no valid corporate authority to do so. SAC at ¶ 91 and 101. John Goodman participated in the money laundering scheme of using stolen FSCLE funds to wash those funds through Multiband Global, AMRR, AMR Resources and ultimately One Path. SAC at ¶ 278. He exercised control over Goodman Networks in the fall of 2022 and personally profited with payment of funds that were stolen from FSCLE. SAC at ¶¶ 292-296, 299, 447, 453-470, 474-478. He also acted to frustrate the Goodman Networks' bankruptcy in an effort to hide and conceal the various misdeeds done on his behalf and on behalf of his family. SAC at ¶¶ 433 – 470.

Jody Goodman received stolen FSCLE funds under facts and circumstances where he knew the source of the funds. SAC at ¶¶ 26, 390-392. Jody Goodman was a member of the board of Goodman Networks until October 22, 2021 when he resigned and thus would have knowledge of the efforts to strip out the assets of Goodman Networks which began before his resignation. SAC

at ¶ 98. Despite his resignation from the board, Jody Goodman remained informed and knowledgeable of the efforts of Frinzi and James Goodman including knowledgeable of the decision to continue to send invoices to FSCLE with no intent to perform. SAC at ¶¶ 126-128. In fact, on November 19, 2021, Jody Goodman sent an email within Goodman Networks saying, "we all agreed this would be for the best" referring to the effort to pull money out of the 4352 account. SAC at ¶ 135. After resigning from the Goodman Networks board with full knowledge of the scheme to steal FSCLE's money, Jody Goodman accepted payments from Goodman Networks of stolen FSCLE funds. SAC at ¶¶ 390-392 and 406. Finally, without the help of Jody Goodman, John Goodman could not have seized control of Goodman Networks in the fall of 2022 and the engaged in the bankruptcy fraud scheme. SAC at ¶¶ 435-455.

Jonathan Goodman received stolen FSCLE funds under facts and circumstances where he knew the source of the funds. SAC at ¶¶ 26, 390-392. He participated in the laundering of stolen FSCLE funds through Multiband Global, AMRR, AMR Resources and One Path. SAC at ¶ 278. Jonathan Goodman helped John Goodman seize control of Goodman Networks in the fall of 2022. SAC at ¶¶ 453-455. That effort to put John Goodman in charge of Goodman Networks was aimed at covering up the stolen FSCLE funds that had flowed to the various Goodman brothers including Jonathan. SAC at ¶¶ 435-455 and 463. Further, Jonathan Goodman through the MBE Group and his assistance to his brother, John Goodman, acted to defraud the Goodman Networks bankruptcy through knowingly false statements and filings. SAC at ¶¶ 433 – 470.

Thus, John Goodman, Jody Goodman and Jonathan Goodman were active participants in the schemes at issue in this case. While the main actors may have been James Goodman, Jim Frinzi and the Auerbachs, this group of Goodman brothers (much like Prosperity Bank) played key roles.

## LAW AND ARGUMENT

**I.     FSCLE More Than Adequately Pled its RICO Claims – Predicate Acts of Bankruptcy Fraud 18 U.S.C. § 152.**

The RICO arguments raised by this group of Defendants are duplicative of the arguments raised by the other Defendants. FSCLE incorporates and adopts its arguments in its Omnibus Response showing that it has pled valid RICO claims. In addition to those arguments and the predicate acts shown therein, FSCLE would also show that these Defendants also committed the predicate act of bankruptcy fraud. 18 U.S.C. § 152. To state a plausible RICO predicate act of bankruptcy fraud (concealment of assets, false oaths and claims), FSCLE alleged facts showing: "(1) the Defendants engaged in a course of action with specific intent to defraud, (2) engaging in a scheme to defraud a bankruptcy proceeding, and (3) the filing of a bankruptcy petition or other related documents or a false statement or fraudulent representation during a bankruptcy proceeding to conceal or execute the scheme. *U.S. v. Chaker*, 820 F.3d 204, 210 (5th Cir. 2016); and *U.S. v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).

Here, John Goodman caused Frinzi to resign as the CEO of Goodman Networks in the summer of 2022. SAC at ¶ 442. At that point, Goodman Networks had either no director or one director, James Goodman, no CEO and could not take any valid corporate action. SAC at ¶¶ 444 and 453. Thereafter, John Goodman directed that the then resigned Frinzi sign documents on behalf of Goodman Networks that John Goodman knew could not be validly signed. SAC at ¶ 445-446. Despite the fact that Frinzi had resigned effective immediately in May 2022, John Goodman asked Frinzi to sign a resignation letter with an effective date of September 4, 2022 to paper over the documents signed in between the actual resignation and the false date of the written resignation. SAC at ¶ 447. John Goodman then had Goodman Networks execute a series of stock conversion that personally benefitted him. SAC at ¶¶ 448-452. John Goodman then caused

6

knowingly false and fraudulent bankruptcy schedules and statement of financial affairs to be filed in the Goodman Networks bankruptcy to conceal the stock conversion and the fraudulent Frinzi consent.  SAC at ¶ 451.

In September 2022, James Goodman, John Goodman, Jonathan Goodman, Jason Goodman and Jody Goodman, acting as the MBE Group (one of the shareholders of Goodman Networks), worked together to establish John Goodman's control over Goodman Networks through an alleged consulting agreement.  SAC at ¶¶ 454-457.  The consulting agreement was fraudulent, void, and entered into to allow John Goodman, under purported color of authority, to conceal property of the estate, to falsify books, records and documents of Goodman Networks, and to frustrate FSCLE's and the other creditors' attempts to have a trustee administer the property of Goodman Networks.  SAC at ¶ 458.  John Goodman could not have seized control of Goodman Networks without the assistance of Jonathan Goodman and Jody Goodman.  SAC at ¶ 454.  Having seized control of Goodman Networks, John Goodman then caused Goodman Networks to enter into a series of transactions to personally benefit himself.  SAC at ¶¶ 471-478.

On October 31, 2022, John Goodman and the Goodman MBE Group (including Jonathan Goodman and Jody Goodman) caused Goodman Networks to file in the Bankruptcy Court an Objection to FSCLE's joinder to the involuntary bankruptcy petition and made the knowingly false statement that "FSCLE is not a creditor – in any form – of Goodman."  SAC at ¶ 459.  John Goodman, Jonathan Goodman and Jody Goodman made this false statement with knowledge that the Goodmans and Frinzi had caused Goodman Networks to steal/defraud at least $67 million from FSCLE.  SAC at ¶ 459.  This group of Goodman brothers took numerous actions to hide their dealings from the bankruptcy process, the hide assets from the bankruptcy court and sought to

convert the chapter 7 bankruptcy into a chapter 11 bankruptcy to allow them to remain in control of Goodman Networks to conceal what had happened. SAC at ¶¶ 460-470.

These facts, backed by the discovery and pleadings in the related Goodman Networks bankruptcy, establish a prima facie case of bankruptcy fraud. The purpose of seizing control of Goodman Networks in the fall of 2022 and then filing the false and fraudulent documents in the bankruptcy was both to direct stolen assets to themselves and also to further hide what their family members and other co-conspirators had done. FSCLE has set forth an additional predicate act of bankruptcy fraud.[2]

## II. FSCLE Has Adequately Plead State Law Claims And The Economic Loss Doctrine Is No Bar to FSCLE's Claims.

These Defendants argue that the economic loss doctrine acts as a bar to FSCLE's state tort claims citing to *Suissi v. Wells Fargo Bank Nat'l Ass'n as Tr. For Soundview Home Loan Tr. 2007-OPT4, Asset-Baked Certificates, Series 2007-OPT4*, 2023 WL 2700721 at *4 (N.D. Tex. Mar. 29, 2023). These Defendants, who have no contractual privity with FSCLE, are simply incorrect that the economic loss doctrine has any application to the claims asserted against them as indicated in *Suissi,* which was a wrongful foreclosure case between a borrower and lender who specifically had a contractual relationship.

The Texas Supreme Court explained how the economic loss rule works in Texas in *Sharyland Water Supply Corp. v. City of Alton,* confirming it has rare application outside of factual scenarios involving contractual privity between the parties to a suit. 354 S.W.3d 407, 415-19 (Tex. 2011). Originally, the economic loss rule was formulated to set perimeters in product liability

---

[2] In a few sentences, these Defendants make the conclusory assertion that the Court will lack jurisdiction if the RICO claims are dismissed. Of course, this assumes a decision that has not been made. Further, FSCLE disputes this assertion. If the Court determines that all of its RICO claims must be dismissed at this early pleading stage, FSCLE requests the opportunity to then fully brief the jurisdictional argument made by these Defendants. At this time, such briefing seems premature and unnecessary.

cases. *Id.* at 415. Over time, it was expanded to preclude tort claims where plaintiffs suffered only economic losses and had a contractual remedy against the defendant. *Id.* at 415-17. The *Sharyland* court noted that the rule has only been applied to parties not in privity in the product liability context and that "we have never held it precludes recovery completely between contractual strangers in a case not involving a defective product…". *Id.* at 418. To say, as these Defendants argue, "that the economic loss rule 'preclude[s] tort claims between parties who are not in contractual privity' and that damages are recoverable only if they are accompanied by 'actual physical injury or property damage' overlooks all of the tort claims for which courts have allowed recovery of economic damages even absent physical injury or property damage." *Id.* at 418 citing *Formosa Plastics Corp USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). In *Formosa*, the Texas Supreme Court held that claims sounding in fraud fall outside of the scope of the economic loss doctrine and do not bar the related tort claims. *Id.* at 47.

Similarly, in the context of the Texas Civil Liability Theft Act, Texas courts have consistently held that where a contract exists but there is no present intention to perform the contract, a claim under the act may be made. *Taylor v. State*, 450 S.W.3d 528, 536 (Tex. Crim. App. 2014); *AAB Logistics, Inc. v. Forward Air, Inc.*, 2016 WL 8672773, *4 (N.D. Tex. Nov. 18, 2016). If the economic loss doctrine was as broad as claimed by the Defendants, the Taylor and AAB Logistics plaintiffs would have been denied recovery on the basis of the economic loss doctrine. They were not. This is because *Sharyland* confirmed "[t]he economic loss rule does not swallow all claims between contractual and commercial strangers." *Sharyland,* 354 S.W.3d at 419.

Here, FSCLE is a contractual stranger to these Defendants and its claims absolutely sound in fraud and theft. As detailed in the SAC, Defendants stole tens of millions from FSCLE by sending FSCLE more than 1,600 invoices, on and after November 3, 2021, with no intention by

the Defendants to perform the services associated with those invoices and/or the related reversing transactions in which all but a small percentage of the money paid by FSCLE would be paid back to FSCLE.  SAC at ¶¶ 10, 23, 89, 118, 120, 121, 159, 160-192 & 217.  This scheme continued after Goodman Networks was internally declared to be defunct with the Defendants sending another 624 invoices to FSCLE after November 23, 2021.  SAC at ¶¶ 24, 138, 140, 159, 217 & 193-215.

Defendants affirmatively misled FSCLE as to why the reversing transactions (money back to FSCLE) were not happening.  SAC at ¶¶ 120, 130, 144 – 149, 152 & 157-158.  In response to the false narrative of the need to migrate the software platform, FSCLE even assigned IT personnel to help with the migration.  SAC at ¶¶ 152-153.  Employees at Goodman Networks reported being "uncomfortable" with what was happening, and the Defendants told them to continue anyway.  SAC at ¶ 129-130, 141.  On November 19, 2021, Defendant Jody Goodman wrote an email saying that "we all agreed this would be for the best" referring to pulling funds from the 4352 account.  SAC at ¶ 135.  When the alleged IT connectivity issue was resolved, FSCLE was told then (and only then) that there would be no reversing transactions.  SAC at ¶¶ 154-158.

The first scheme here was to steal funds from FSCLE by sending invoices to FSCLE pursuant to the funds flow with Goodman Networks with no intent to perform the reversing transactions all to build the cash balance that could then be laundered.  That is the essence of FSCLE's case.  As discussed in its Omnibus Response, FSCLE has pled with particularity the elements needed to establish its Theft Liability Act, conversion, unjust enrichment, fraud and civil conspiracy claims.  Under the Texas Supreme Court's holding in *Sharyland* and *Formosa*, the economic loss doctrine is no bar to these claims.

## CONCLUSION

Defendant John Goodman's, Jody Goodman's and Jonathan Goodman's Motion to Dismiss [Dkt. #120] fails for all the reasons that the other Motions to Dismiss fail.  FSCLE has sufficiently pled a RICO claim and its state law claims.  In addition to the other predicate acts of the other Defendants, these Defendants committed bankruptcy fraud – further showing the sufficiency of FSCLE's pleading.  Finally, the economic loss doctrine does not bar FSCLE's claims.  Defendants' Motion to Dismiss fails and must be denied.

88841394.v1