**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| FEDEX SUPPLY CHAIN LOGISTICS & ELECTRONICS, INC., | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Civil Action No. 3:23-cv-02397 |
| v. | ) <br> ) |
| JAMES E. GOODMAN, JR., *et al.*, | ) <br> ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT PROSPERITY BANK'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Attorneys for Plaintiff FedEx Supply Chain Logistics & Electronics, Inc.

**BUTLER SNOW LLP**

By: */s/ Daniel W. Van Horn*
DANIEL W. VAN HORN  (Pro Hac Admitted)
S. KEENAN CARTER (TX Bar No. 24006966)
R. CAMPBELL HILLYER (Pro Hac Admitted)
ADAM M. LANGLEY (Pro Hac Admitted)
KATHERINE KUCHENBECKER (Pro Hac Admitted)
6075 Poplar Ave., Ste. 500
Memphis, TN 38119
(901) 680-7200
(901) 680-7201 (fax)
Danny.VanHorn@butlersnow.com

**SAYLES LAW FIRM**
RICHARD A. SAYLES
Texas Bar No. 17697500
dsayles@sayleslawfirm.com
5600 W. Lovers Lane, Ste. 116-363
Dallas, TX 75209
(214) 643-8030 (Telephone)

**FEDERAL EXPRESS CORP.**
JASON R. BERNHARDT
Texas Bar No. 24045488
jasonbernhardt@fedex.com
3620 Hacks Cross Rd., Bld. B
Memphis, Tennessee 38125
(901) 434-3213 (Telephone)
(901) 434-9279 (Fax)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION ...................................................................................................... 1

II.     LAW AND ARGUMENT ......................................................................................... 2

        A.      Prosperity Bank's Motion is Procedurally Improper and Should be
                Converted to a Summary Judgment Motion. .......................................... 2

        B.      Prosperity Bank is Either Estopped from Challenging the Assignment or
                Has Waived Any Right to Challenge the Assignment. ............................. 5

        C.      The Anti-Assignment Clause in the Master Agreement Does Not Bar
                Assignment of a Breach of Contract Cause of Action and is Irrelevant to
                Assignment of Tort and Statutory Claims. ............................................... 9

        D.      The Trustee's Authority Under the Bankruptcy Code to Assign Goodman
                Networks' Breach of Contract, Negligence and UCC Article 4A Claims to
                FedEx is Unaffected by the Anti-Assignment Clause. ........................... 12

III.    CONCLUSION ........................................................................................................ 15

CERTIFICATE OF SERVICE ......................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*1901 Gateway Holdings, LLC v. Centimark Corp.*,
  2024 WL 665701 (N.D. Tex. Feb. 16, 2024).............................................................. 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................... 2, 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, (2007).................................................................................................... 2, 3

*Choice Expl., Inc. v. Gemini Ins. Co.*,
  No. 1:21-CV-00609, 2022 U.S. Dist. LEXIS 242699, at *4 (E.D. Tex. Dec. 16, 2022).......... 10

*City of Brownsville ex rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.*,
  348 S.W.3d 348 (Tex. App.—Dallas 2011, no pet.).................................................... 11

*City of San Antonio v. Valemas, Inc.*,
  2012 WL 2126932 (Tex. App. – San Antonio June 13, 2012, no. pet.) ..................... 10

*D.A.N. Joint Venture III, L.P v. Touris*,
  2020 WL 1445623 (N.D. Ill. March 25, 2020)........................................................... 13

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ....................................................................................... 2

*Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*,
  520 S.W.3d 145 (Tex. App. – Austin 2017, pet. denied) ........................................... 9

*Gamel v. Grant Prideco, L.P.*,
  625 Fed. Appx. 690 (5th Cir. 2015)............................................................................. 4

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ....................................................................................... 5

*Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*,
  426 F.3d 330 (5th Cir. 2005) ....................................................................................... 10

*Holiday Inn Club Vacations, Inc. v. CBRE, Inc.*,
  No. 14-23-00976-CV, 2025 Tex. App. LEXIS 594 (Tex. App.—Houston [14th Dist.]
  Feb. 4, 2025, pet. denied)............................................................................................. 9, 11

*IC Tech-Bendeck v. Waste Connections Bayou, Inc.*,
  2024 WL 5186589 (E.D. La. Dec. 20, 2024)............................................................... 12

*In re Coastal Plains, Inc.*,
179 F.3d 197 (5th Cir. 1999) ....................................................................................... 6

*In re GNI Group, Inc.*,
402 B.R. 195 (S.D. Tex. 2008) ................................................................................... 14

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ....................................................................................... 2

*In re Lil' Things, Inc.*,
220 B.R. 583 (Bkrtcy. N.D. Tex. 1998)...................................................................... 14

*Matter of Murexco Petroleum, Inc.*,
15 F.3d 60 (5th Cir. 1994) .......................................................................................... 14

*New Hampshire v. Maine*,
532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).............................................. 5

*Occidental Petroleum Corporation v. Wells Fargo Bank, N.A.*,
117 F.4th 628 (5th Cir. 2024) ................................................................................... 5, 6

*Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2nd Cir. 2003) ................................................................................ 12, 13

*Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*,
323 S.W.3d 203 (Tex. App.—El Paso 2010, pet. denied) .......................................... 10

*Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*,
931 F.2d 351 (5th Cir. 1991) ....................................................................................... 8

*Pogo Resources, LLC v. St. Paul Fire and Marine Ins., Co.*,
No. 3:19-CV-2682-BH, 2022 U.S. Dist. LEXIS 12016, at *18-20 (N.D. Tex. Jan. 24,
2022) ........................................................................................................................... 13

*Provider Meds, LLC v. RPD Holdings, LLC*,
907 F.3d 845 (5th Cir. 2018) ...................................................................................... 13

*Safeco Ins. Co. of Am. v. Clear Vision Windshield Repair, LLC*,
564 S.W.3d 913 (Tex. App.—Houston [14th Dist.] 2018, no pet.)........................... 6, 7

*United States v. McCaskey*,
9 F.3d 368 (5th Cir.1993) ............................................................................................ 6

*Zarate v. Rodriguez*,
542 S.W.3d 26 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ........................ 7

**STATUTES**

11 U.S.C. § 365(f)(1) ........................................................................................... 12, 14

11 U.S.C. § 541................................................................................................... 12, 14

11 U.S.C. § 541(c)(1)(B) ............................................................................................... 14

Bankruptcy Code § 541(c)(1)(B) .................................................................................. 12

Tex. Bus. & Comm. Code § 2.210(d) ............................................................................. 9

**RULES**

Fed. R. Civ. P. 12(d) ...................................................................................................... 4

Fed. R. Civ. P. 12(b)(6).................................................................................................. 2

Fed. R. Civ. P. 12(c) ................................................................................................... 2, 4

Plaintiff FedEx Supply Chain Logistics & Electronics, Inc. ("FedEx", "FSCLE" or "Plaintiff") for its Response in opposition to the Motion for Partial Judgment on the Pleadings [Dkt. #220 and 221] filed by Defendant Prosperity Bank states as follows:

## I.    INTRODUCTION

Prosperity Bank filed a Counterclaim in this case [Dkt. #114] wherein it specifically alleges that "FedEx was assigned Goodman Networks' claims against Prosperity Bank" and, based on this allegation, asserts a breach of contract claim against FedEx. [Dkt. #114 at ¶¶ 11 and 20]. Incredibly, despite this admission, Prosperity Bank now asks the Court for partial judgment on the pleadings claiming that FedEx received no valid assignment from the Goodman Networks Bankruptcy Trustee. Prosperity Bank now asserts that an anti-assignment clause in the very contract upon which Prosperity Bank has sued FedEx (the Master Agreement) makes the assignment invalid. The motion fails for multiple reasons and borders on the frivolous.

First, Prosperity Bank has adopted the position in this case that Goodman Networks' claims were, in fact, assigned to FedEx, and countersued on that basis asserting a breach of contract claim. As a result, Prosperity Bank is judicially estopped from now taking a completely contrary position two and half years after the original complaint was filed, two years after the claims were validly assigned and nearly twenty months after its counterclaim against FedEx. Alternatively, Prosperity Bank's conduct and delay demonstrates it consented to the assignment or waived the right to enforce the anti-assignment clause when it did nothing to challenge the assignment in the bankruptcy proceedings, embraced the assignment to assert a counterclaim in this proceeding and delayed almost two years to assert the assignment was invalid.

Second, even if the anti-assignment clause was enforceable, its language does not preclude assignment of a breach of contract cause of action and has no application to FedEx's tort and statutory causes of action.

1

Third, the assignment of the breach of contract claim in this case is valid because the Goodman Networks bankruptcy estate owned the cause of action as a matter of law and as a matter of well-established bankruptcy law and practice, the estate's trustee can assign a cause of action despite an anti-assignment clause.

Lastly, because Prosperity Bank's motion attempts to bypass the allegations in FedEx's live complaint, demands evidence of the assignment, and requires FedEx to present evidence of the bankruptcy proceedings, the motion is procedurally improper.  Rule 12(d) requires the Court to convert the motion to one for summary judgment so that it can consider evidence outside the pleadings, which defeats Prosperity Bank's arguments.

II.    <strong><u>LAW AND ARGUMENT</u></strong>

**A.    Prosperity Bank's Motion is Procedurally Improper and Should be Converted to a Summary Judgment Motion.**

As an initial matter, Prosperity Bank's motion is procedurally improper for two reasons. First, it seeks partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same legal standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). In deciding a motion for judgment on the pleadings, the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff[s].'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

When faced with a motion for judgment on the pleadings, the reviewing court looks to see if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a

2

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).

Here, Prosperity Bank's motion does not really attack the factual sufficiency of the allegations of FedEx's complaint. Just the opposite, the motion repeatedly acknowledges that FedEx pled its standing to bring the claims at issue pursuant to an assignment it obtained from the Goodman Networks bankruptcy trustee. [Dkt. No. 221 at pgs. 4-6 & 9-10]. Instead, Prosperity Bank argues that FedEx's allegations are invalid due to an anti-assignment provision in the account agreement between Prosperity Bank and Goodman Networks. On its face, this is not procedurally proper because the well-pled allegations of the complaint must be treated as true and FedEx plainly alleges (and Prosperity Bank acknowledges) an assignment from the Bankruptcy Trustee. [Dkt No. 159 at ¶¶ 772, 791 and 846]. While Prosperity Bank clearly wishes to assert its disagreement with those allegations, the procedural vehicle to do so would be a motion for summary judgment, not a motion on the pleadings.

In this regard, Prosperity Bank's motion must be converted to a summary judgment motion because of the arguments presented by Prosperity Bank. Specifically, the motion concludes by acknowledging that FedEx's pleading references its agreement with the Goodman Networks bankruptcy trustee, which effectuated the assignment of the claims at issue. [Dkt. No. 221 at pgs. 11-12]. The motion then argues that these allegations are not sufficient because the bankruptcy order allowing for the assignment itself does not grant FedEx an assignment and does not state what causes of action are to be assigned to FedEx. [*Id.* at pg. 12]. The motion closes by overtly

making an evidentiary argument asserting "no valid assignment exists and FedEx does not have standing to assert Counts 8-10 against Prosperity Bank" and citing a Texas case that states "the party claiming the assigned right must prove not only that a cause of action existed that was capable of assignment but also that the cause was in fact assigned to the party seeking recovery." [*Id.* at pg. 13]. In other words, Prosperity Bank acknowledges that FedEx has plead it was assigned the right to bring the claims at issue but argues that evidence of the assignment is required.

When matters outside the pleading are presented to respond to a Rule 12(c) motion, the motion must be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gamel v. Grant Prideco, L.P.,* 625 Fed. Appx. 690, 693 (5th Cir. 2015). FedEx can only respond to Prosperity Bank's argument by providing the assignment contained in the global settlement agreement with the bankruptcy trustee. Also, as discussed below, to show that Prosperity Bank has assented to the assignment or waived any right to challenge it, external evidence of what occurred in the bankruptcy case is necessary. These things require that the motion be converted to one for summary judgment.

Attached hereto as Exhibit 1 is a true and correct copy of settlement between the bankruptcy trustee and FedEx that was filed with the bankruptcy court on February 29, 2024. *In re: Goodman Networks*, Case No. 22-31641, Dkt. # 502. Despite Prosperity Bank's arguments, this assignment demonstrates that FedEx was factually and indisputably assigned the right to assert the claims at issue against Prosperity Bank, which otherwise were owned by the Goodman Networks bankruptcy estate and controlled by the trustee. [*Id.*]. This evidence, made necessary by Prosperity Bank's arguments, defeats Prosperity Bank's assertion that there is no evidence the causes of action at issue were assigned to FedEx.

**B.**    **Prosperity Bank is Either Estopped from Challenging the Assignment or Has Waived Any Right to Challenge the Assignment.**

By asserting a counterclaim against FedEx under the Master Agreement, by being aware of the assignment by the bankruptcy trustee and not objecting to it in the bankruptcy court, and by waiting almost 2 years to claim the anti-assignment clause in that same Master Agreement bars certain of FedEx's claims in this case, Prosperity Bank has either waived the right to enforce the clause or is estoppel from now seeking to enforce it.

Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). Statements made by an attorney before the court or in pleadings can be imputed to a party and subject to judicial estoppel. *Id*. at 396-397 (citing to *New Hampshire v. Maine,* 532 U.S. 742, 753, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (For judicial estoppel to apply the statements or positions taken need not be sworn statements of the party).

A variety of Fifth Circuit cases addressing judicial estoppel examine whether the court where either the earlier statement or the later statements were made adopted or acted on either of the inconsistent statements. *See e.g. Hall*, 327 F.3d at 399. However, as the Fifth Circuit made clear in *Hall*, judicial acceptance of one of the inconsistent positions is not required if the party asserting inconsistent positions "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*. (citing to *New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808). Thus, judicial acceptance need not be established if the inconsistent positions would result in an unfair detriment.

In *Occidental Petroleum Corporation v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 638-640 (5th Cir. 2024), Wells Fargo took the position that a trust agreement was a contract at the motion to dismiss stage and later took the position that the trust agreement was not a contract. The Fifth

5

Circuit affirmed application of judicial estoppel against Wells Fargo citing the unfair advantage test. The Fifth Circuit held:

> Foreclosing Occidental's second path to relief by allowing Wells Fargo to reverse its argument for dismissing the first strikes us as enabling a classic "heads I win/tails you lose" position. Doing so would confer upon Wells Fargo the unfair advantage of defeating both claims using diametrically opposed arguments and unfairly leave Occidental with no recourse despite adapting its claims in the wake of the district court's initial ruling. In short, a textbook case for judicial estoppel"

*Id.* at 639. "The policies underlying the doctrine include preventing internal inconsistency, precluding litigants from playing fast and loose with the courts, and prohibiting parties from deliberately changing positions according to the exigencies of the moment." *United States v. McCaskey,* 9 F.3d 368, 378 (5th Cir.1993). The doctrine is generally applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice". *In re Coastal Plains, Inc.,* 179 F.3d 197, 205–06 (5th Cir. 1999).

Prosperity Bank is judicially estopped from taking directly contrary positions with regard to the assignment. In its counterclaim in this case, Prosperity Bank took the position that the assignment occurred and used that assignment as a basis to sue FedEx. [Dkt. #114 at ¶¶ 11 and 20]. Now in this motion, Prosperity Bank takes the exact opposite position and argues that the assignment was not valid. This type of side switching to gain a tactical advantage is discouraged and improper. Here, just as in *Occidental Petroleum*, Prosperity Bank is trying to employ a strategy of winning on both sides of an argument. If its motion to dismiss were granted, Prosperity Bank would still have a counterclaim against FedEx but FedEx's claims against it would be gone – all from diametrically opposed positions. Prosperity Bank's motion must be denied based on judicial estoppel.

Also, Prosperity Bank has asserted Texas law in support of its arguments regarding the anti-assignment clause in the Master Agreement. Under Texas contract law, a party may waive contractual rights, including an anti-assignment clause. *See, e.g, Safeco Ins. Co. of Am. v. Clear*

6

*Vision Windshield Repair, LLC,* 564 S.W.3d 913, 920 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (finding waiver of anti-assignment clause). The elements of waiver include: 1) an existing right, benefit, or advantage held by a party; 2) the party's actual knowledge of its existence; and 3) the party's actual intent to relinquish that right, or intentional conduct inconsistent with claiming that right. *Id.* citing *Zarate v. Rodriguez,* 542 S.W.3d 26, 40 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). While waiver is generally a question of fact, a party's express renunciation of a known right can establish waiver as well as a party's silence or inaction for a period of time long enough to show an intention to yield the known right.

Prosperity Bank's waiver of the right to challenge the assignment to FedEx is established in several ways, First, its counterclaim embraces the Master Agreement for its benefit and to bring a claim against FedEx. Second, the settlement between the bankruptcy trustee and FedEx was filed with the bankruptcy court on February 29, 2024. *In re: Goodman Networks*, Case No. 22-31641, Dkt. # 502 (attached hereto as <u>Exhibit 1</u>). Prosperity Bank was an active participant in the Goodman Networks bankruptcy leading up to the filing including arguing a Bankruptcy Rule 9019 motion before the bankruptcy court and receiving actual notice of the settlement.  *See* Declaration of Daniel W. Van Horn, attached hereto as <u>Exhibit 3</u>.  The assignment of the bankruptcy estate's claims against Prosperity Bank is spelled out on page twelve of the settlement agreement and in the term sheet filed with the bankruptcy court as docket 502-1.  As a participant in the bankruptcy proceeding, Prosperity Bank was provided a copy of this pleading.  (*See* Exhibit 1 at Dkt. # 502-2).

To finalize the assignment of claims as part of the settlement, the bankruptcy trustee and FedEx had to seek bankruptcy court approval.  Incredibly, Prosperity Bank's motion in this case claims that Prosperity Bank was not asked for its consent to the assignment of rights to FedEx. Yet, Prosperity Bank totally omits the fact that the bankruptcy court held a hearing on March 28,

7

2024 to address approval of the assignment.  Despite notice of the settlement, the assignment and the motion seeking court approval of same - a month before the hearing - and the opportunity to appear and object to the assignment, Prosperity Bank did not do so. The bankruptcy court held the hearing and then entered its order approving the assignment of claims as an order of the bankruptcy court on March 29, 2024.  *In re: Goodman Networks*, Case No. 22-31641, Dkt. # 526 (attached hereto as Exhibit 2).

Third, Prosperity Bank has been aware of the Bankruptcy Court's approval of the assignment of claims to FedEx since at least February 29, 2024 and of the actual assignment of those claims since March 29, 2024 (bankruptcy court approval). Yet, Prosperity Bank waited nearly 2 years to file this motion seeking to use the anti-assignment clause in the Master Agreement to defeat the claims assigned to FedEx by the trustee.

While mere silence might not act as a waiver, the fact is that Prosperity Bank had notice the trustee intended to assign rights under the Master Agreement to FedEx well before the assignment occurred. Prosperity Bank did nothing to challenge that assignment. Instead, it allowed the assignment to occur and then capitalized on it by asserting its counterclaim in this case, which embraces the fact that the assignment occurred. This conduct, in its entirety, is intentional enough to constitute assent to the assignment or waiver or an objection to it, as previously discussed.  *See Pitts By & Through Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991) (to constitute waiver, one must establish that the party waiving voluntarily and intentionally relinquished a known right).  This delay, at a minimum, is sufficient to deny the motion so that the issue of waiver can be presented to the fact-finder at the time of trial.

Ultimately, with advance knowledge of the anticipated assignment, an opportunity to object but remaining silent, actual knowledge of judicial approval of the assignment, and then

pleading that the assignment occurred in its own counterclaim, Prosperity Bank has either assented to the assignment or waived any right to challenge the assignment.

Because Prosperity Bank either waived the right to challenge the assignment or is judicially estopped from doing so, the motion should be denied.

**C.      The Anti-Assignment Clause in the Master Agreement Does Not Bar Assignment of a Breach of Contract Cause of Action and is Irrelevant to Assignment of Tort and Statutory Claims.**

Prosperity Bank's motion fails for the further reasons that the anti-assignment provision in the Master Agreement does not preclude the assignment of a *cause of action* for breach of the Master Agreement, and is completely irrelevant to assignment of claims outside of the Master Agreement such as the tort and statutory causes of action asserted against Prosperity Bank.

As set forth in the next section, the Trustee was well within his right to assign Goodman Networks' claims to FedEx, including for breach of the Master Agreement.  But even if the Court were to find otherwise, the wording of the anti-assignment clause is limited to the assignment of any "rights under" the Master Agreement and, therefore does not bar assignment of a *cause of action* for breach of contract claim nor does it have any impact on extra-contractual claims such as Goodman Networks' negligence (cause 9) or UCC Article 4A (cause 10) claims against Prosperity Bank.

Texas law is plain that it distinguishes between assignment of a contract and assignment of a claim for breach of contract.  TEX. BUS. & COMM. CODE § 2.210(d); *Elness Swenson Graham Architects, Inc. v. RLJ II–C Austin Air, LP*, 520 S.W.3d 145, 153-154 (Tex. App. – Austin 2017, pet. denied).  More specifically, "Texas law recognizes a distinction between a contracting party's ability to **assign rights** under a contract containing an anti-assignment provision, and that same party's ability to assign a **cause of action** arising from a breach of that contract." *Holiday Inn Club Vacations, Inc. v. CBRE, Inc.,* No. 14-23-00976-CV,

9

2025 Tex. App. LEXIS 594, at *13 (Tex. App.—Houston [14th Dist.] Feb. 4, 2025, pet. denied); quoting *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship,* 323 S.W.3d 203, 211-12 (Tex. App.— El Paso 2010, pet. denied) (emphasis added). Indeed, Texas courts have consistently found that "causes of action are freely assignable" even where the contract itself may not be. *See 1901 Gateway Holdings, LLC v. Centimark Corp.*, 2024 WL 665701, *4-5 (N.D. Tex. Feb. 16, 2024); *City of San Antonio v. Valemas, Inc.*, 2012 WL 2126932, *8 (Tex. App. – San Antonio June 13, 2012, no. pet.)).

Of course, Texas law is well-settled that contractual provisions are interpreted according to their plain and ordinary meaning unless the language indicates the parties intended a technical meaning. *See, Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan,* 426 F.3d 330, 334 (5th Cir. 2005). As a result, courts apply anti-assignment clauses only insofar as the language of the applicable clause allows. For example, in *Choice Expl., Inc. v. Gemini Ins. Co.,* the District Court was faced with an anti-assignment clause in an insurance policy that purportedly required the insurance carrier to consent before the policy could be assigned. No. 1:21-CV-00609, 2022 U.S. Dist. LEXIS 242699, at *4 (E.D. Tex. Dec. 16, 2022). The specific clause stated: "The Policy shall be void if assigned or transferred without the written consent of the Company." *Id.* at *8. The party suing the insurance carrier, however, did not receive an assignment of the insurance policy but rather an assignment of the insured's claims and any settlement owed to the insured. *Id.* Interpreting the plain language of the clause, the District Court found the plaintiff's claims were unaffected by the anti-assignment clause because "[t]he assignment of an insurance policy is not synonymous with an assignment of claims or settlements payments derived from that policy." *Id.*

An identical result was reached in *Holiday Inn* where the anti-assignment clause provided that: "Neither Party shall assign this Agreement (other than an assignment to an affiliate or by

operation of law) without prior written consent of the other Party." 2025 Tex. App. LEXIS 594, at *13. The Court of Appeals concluded the clause did not apply to the assignment of a breach of contract cause of action to the plaintiff because the clause only prevented assignment of the agreement and "does not limit the parties' rights to assign a cause of action arising from an alleged breach of the agreement." *Id.*

Building on this distinction*,* in *City of Brownsville ex rel. Pub. Utils. Bd. v. AEP Tex. Cent. Co.,* the Dallas Court of Appeals was presented with a purchase and sale agreement, which included the following anti-assignment clause: "The rights under this Agreement shall not be assignable or transferable nor the duties delegable by either Party without the prior written consent of the other Party…" 348 S.W.3d 348, 358 (Tex. App.—Dallas 2011, no pet.). The cross-defendant being sued based on an assignment of claims to the cross-plaintiff argued that because the cross-plaintiff did not obtain its written consent to enter into the assignment agreement, the assignment was void and the cross-plaintiff lacked standing to assert claims under the agreement. *Id.* This argument was rejected by looking to the plain language of the clause to determine if it prohibited an assignment of causes of action. *Id.* The Court of Appeals held that "[t]he clause merely states the rights and duties under the agreement were not assignable without written consent…" but the clause "does not indicate an intent to limit the parties' ability to assign causes of action arising from an alleged breach of the [agreement]. *Id.* As a result, the court found that the original party to the contract retained the right to assign causes of action arising from a breach of the agreement and the assignment to the cross-plaintiff was unaffected by the anti-assignment clause, was valid and enforceable. *Id.*

Further, the courts which have looked at the assignability of tort claims and statutory claims where a contract contained an anti-assignment clause, have similarly found non-contract claims to be freely assignable separate and apart from the anti-assignment clause in the contract. *See, e.g.,*

11

*IC Tech-Bendeck v. Waste Connections Bayou, Inc.*, 2024 WL 5186589, *6-8 (E.D. La. Dec. 20, 2024) (anti-assignment clause in the operating agreement was no bar to assignment of tort and statutory claims); *see also Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 156 (2nd Cir. 2003) (deciding case under Texas law and looking at assignment of contract and tort claims).  Simply put, the anti-assignment clause in the account agreement is meaningless to an assignment of negligence and UCC Article 4A claims that exist outside of the Master Agreement and in no way can be construed as "rights under this Agreement."

Because the plain language of the anti-assignment clause in the Master Agreement only prevents assignments of "rights under this Agreement" it does not apply to the trustee's assignment of a breach of contract cause of action or to the extra-contractual claims assigned to FedEx and asserted in the live Complaint. As a result, Prosperity Bank's motion should be denied.

**D.     The Trustee's Authority Under the Bankruptcy Code to Assign Goodman Networks' Breach of Contract, Negligence and UCC Article 4A Claims to FedEx is Unaffected by the Anti-Assignment Clause.**

Prosperity Bank's motion is totally devoid of any analysis of bankruptcy law or a bankruptcy trustee's right to assign claims. This is not a mistake because the Bankruptcy Code specifically allows bankruptcy trustees to assign contracts and claims regardless of anti-assignment clauses.  While FedEx does not dispute the general applicability of the Texas law enforcing anti-assignment clauses in contracts, none of that law addresses the assignment of claims in bankruptcy.

Pursuant to 11 U.S.C. § 541, non-executory contracts and causes of action are property of the bankruptcy estate.  Bankruptcy Code § 541(c)(1)(B) invalidates restrictions on transfer once property becomes an interest of the bankruptcy estate.  Similarly, 11 U.S.C. § 365(f)(1) provides that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the

trustee may assign such contract or lease under paragraph (2) of this subsection." In other words, this statute authorizes a bankruptcy trustee to assign an executory contract even where legal or contractual provisions would otherwise prohibit assignment.

Based on this background, courts which have looked at the validity of assignment from a bankruptcy trustee to a third party have consistently held that the assignee stands in the shoes of the bankruptcy trustee and has all of the rights and authority that the bankruptcy trustee otherwise would have had and unaffected by any anti-assignment clause. *See e.g. Pogo Resources, LLC v. St. Paul Fire and Marine Ins., Co*., No. 3:19-CV-2682-BH, 2022 U.S. Dist. LEXIS 12016, at *18-20 (N.D. Tex. Jan. 24, 2022); *Official Committee of Unsecured Creditors of Color Tile*, 322 F.3d at 156; *D.A.N. Joint Venture III, L.P v. Touris*, 2020 WL 1445623, *6 (N.D. Ill. March 25, 2020).

In *Pogo*, a bankruptcy court approved the sale of the assets and assignment of claims of a bankrupt entity to the plaintiff. 2022 U.S. Dist. LEXIS 12016, at *4-5. This included the rights the bankrupt entity had to insurance proceeds from insurance policies. The insurance carrier defendant argued that the insurance policy's anti-assignment clause made the bankruptcy assignment void. *Id.* at *17. The clause at issue stated: "Neither you nor any other person or organization protected under your policy can assign, transfer, or otherwise turn over, your interest in it without consent from us…" *Id.* at *18. The District Court noted that such anti-assignment clauses are generally enforced in Texas but can be rendered ineffective by an applicable statute, estoppel, waiver or some other aspect of contract law. *Id.* With reference to the provisions in the bankruptcy code that allow a trustee to assign a contract, even where legal or contractual provisions would otherwise prohibit assignment, the District Court found the anti-assignment clause unenforceable because the trustee's statutory rights under the Bankruptcy Code trumped the language in the policy. *Id.* at *18-20; *see also Matter of Provider Meds, LLC v. RPD Holdings, LLC*, 907 F.3d 845, 851 (5th Cir. 2018) (a trustee may assign an executory contract despite anti-assignment language in the

13

contract); *In re GNI Group, Inc.*, 402 B.R. 195, 202 (S.D. Tex. 2008) (bankruptcy trustee could assign contractual rights against an insurer despite anti-assignment language in insurance policy); *In re Lil' Things, Inc.*, 220 B.R. 583. 590-591 (Bkrtcy. N.D. Tex. 1998) (bankruptcy trustee may assign contract or lease despite anti-assignment provision in the agreement).

The rationale for allowing a bankruptcy trustee to assign an otherwise unassignable contract is sound. One purpose of the bankruptcy trustee is to maximize the value of the assets of a bankruptcy estate. To do that, bankruptcy trustees sometimes conclude that assigning contracts or claims is more valuable than asserting those contracts or claims themselves. As a matter of federal bankruptcy law, trustees need to be free to assign contracts and claims free of anti-assignment restrictions. That policy is found in multiple places in the bankruptcy code including 11 U.S.C. § 541(c)(1)(B) and 365(f)(1).

Had Goodman Networks attempted to assign its rights under the account agreement against Prosperity Bank prior to going into bankruptcy, Prosperity Bank's analysis of the assignability of the contract might be more availing. That is not what happened. Because Goodman Networks' bankruptcy trustee could assert a claim against Prosperity Bank for breach of contract, negligence and under UCC Article 4A pursuant to 11 U.S.C. § 541, the bankruptcy trustee may also assign those causes of action to FedEx. Further, to the extent the Master Agreement is considered an executory contract,[1] 11 U.S.C. § 365(f)(1) authorized the trustee to assign the Master Agreement – and all rights thereunder – to FedEx unaffected by any provision in the contract that might otherwise restrict such assignment. As a result, the bankruptcy trustee's assignment of claims to FedEx was valid, proper and Prosperity Bank's motion should be denied.

---

[1] An agreement is executory if, at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party. *Matter of Murexco Petroleum, Inc.* 15 F.3d 60, 62-63 (5th Cir. 1994).

### III.    <u>CONCLUSION</u>

Prosperity Bank's motion for partial judgment on the pleadings fails, should be converted to a motion for summary judgment and should be denied.  FedEx should be granted all other and further relief to which it is entitled.

15

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading has been served via the Court's cm/ecf system this the 13th day of February 2026 upon all counsel of record, including:

*Counsel for 18920 NW 11th LLC, Alliance Texas Holdings, LLC, Evalina Pinkhasova, Neil Auerbach, Shalom Auerbach, Auerbach Partners, LP , Steven Zakharyayev, Hudson Clean Energy, Judith Auerbach, the Auerbach Family Trust and the Auerbach Children's Trust*
Michael Cancienne, Esq.
Joseph Golinkin, Esq.
Jordan, Lynch & Cancienne PLLC
1980 Post Oak Blvd., Ste. 2300
Houston, TX 77056
mcancienne@jlcfirm.com
jgolinkin@jlcfirm.com

*Counsel for James Frinzi,*                          *Counsel for James Goodman,*
*The Frinzi Family Trust, and*                     *Goodman Investment Holdings LLC*
*HSB Holdings LLC*                                    *and Unified Field Services, Inc.*
Paul Elkins, Esq.                                         Randy Pulman, Esq.
Wick Phillips Gould & Martin LLP           Pulman Cappuccio & Pullen LLP
100 Throckmorton St., Ste. 1500             2161 NW Military Hwy, Ste. 400
Fort Worth, TX 76101                             San Antonio, TX 78213
paul.elkins@wickphillips.com                   rpulman@pullmanlaw.com

*Counsel for Prosperity Bank*
Meredith Tavallaee, Esq.
Chris Bankler, Esq.
Jackson Walker LLP
1401 McKinney Ste. 1900
Houston, TX 77010
mtavallaee@jw.com
cbankler@jw.com

*Attorney for John Goodman, Jonathan Goodman, Jody Goodman and Jake Goodman*
David Skeels, Esq.
Tom Harkins, Esq.
Whitaker Chalk Swindle & Schwartz, PLLC
301 Commerce Street
Fort Worth, TX 76102
dskeels@whitakerchalk.com
tharkins@whitakerchalk.com                      By: /s/ Daniel W. Van Horn

16